# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION – DETROIT

In re:

MICHELLE DENISE STEWART,           Case No. 10-41342-wsd

       Debtor.                        Chapter 7

                                               Hon. Walter Shapero

_____/

## OPINION REGARDING AWARD OF ACTUAL DAMAGES, ATTORNEYS' FEES, AND COSTS

### INTRODUCTION

On September 19, 2013, the Court found Baldwin Summit, LLC, Royal Management, LLC, and Marcus Evangelista (collectively the "Creditors") in violation of the bankruptcy stay and liable for conversion for improperly possessing and claiming title to some of Debtor's commercial equipment ("the equipment"). Debtor was awarded the return of this equipment, or alternatively, a money judgment for its fair market value. The Court also awarded reasonable attorney fees, costs, and actual damages to the Debtor and the present issue is the appropriate amounts of these awards, which is brought before this Court by the Affidavit in Support of Debtor's Request for Attorney Fees, Costs and Damages, [ECF No. 140] ("Debtor's Affidavit"), and responses thereto.

### BACKGROUND FACTS[1]

For three years this case has been contentiously litigated to determine Debtor's rights in the equipment she had used to operate a carry-out pizza restaurant, located within a leased commercial space ("the premises") at the Orion Village Shopping Center. In 2010, Debtor filed

---

[1] The facts of the underlying litigation are explained in greater detail in the Court's Opinion, *In re Stewart*, 499 B.R. 557 (Bankr. E.D. Mich. 2013).

chapter 7 bankruptcy and began winding down this pizza business. Concurrently, Creditors purchased[2] the Shopping Center from Fifth Third Bank after the Bank foreclosed on the previous landlords. Upon taking control of the Shopping Center, Creditors found Debtor's equipment and assumed it had been abandoned since the restaurant was no longer operating. Creditors claimed title to all this remaining equipment. On November 18, 2010, Debtor filed a Motion to Compel the release of the equipment. Five days later, Debtor filed a Supplementary Motion to Hold Creditors in Violation of 11 U.S.C. §§ 362(a)(3),(6), and (7) and 11 U.S.C. § 727.

Debtor initially retained attorney Raymond Mashni to file her chapter 7 bankruptcy. He also filed the Motion to Compel, but once it became apparent that this matter would not be amicably resolved, Debtor hired attorney Andrew Concannon to litigate the equipment recovery issue. The litigation culminated into a two-day trial on April 30, 2013, and May 1, 2013. After taking the matter under advisement, this Court found Creditors liable for conversion and for violating the automatic stay with respect to $2,670 worth of the equipment—the only equipment that was still located on the premises when Creditors took control of the Shopping Center.[3] The Court awarded Debtor the return of those pieces of equipment, or alternatively, a money judgment of $2,670. Debtor elected to take the equipment. The Court also awarded her costs, attorney fees, and actual damages, and instructed Debtor to file an affidavit detailing those amounts she is seeking.

Debtor filed the requested affidavit on October 21, 2013, seeking attorney fees for both Mr. Concannon and Mr. Mashni, costs for Mr. Concannon, and actual damages. This was accompanied by Mr. Concannon's Affidavit, which itemized the fees and costs he incurred in

---

[2] Baldwin Summit, LLC was the purchasing entity. The Shopping Center was then managed by Royal Management, LLC. Dr. Stella Evangelista and Jose Evangelista are the sole managing members of both entities. Dr. Evangelista's son, Marcus Evangelista ("Mr. Evangelista"), is the general counsel and resident agent for both entities. Mr. Evangelista has been representing Baldwin Summit, Royal Management, and himself during this case.

[3] The total value of all property Debtor sought to recover was $9,370.

this case. (Aff. in Support of Debtor's Request, Oct. 21, 2013, ECF No. 139) ("the Fee Affidavit"). Creditors filed a timely response. An evidentiary hearing was held on November 12, 2013 ("the Fee Hearing"), and the Court subsequently took the matter under advisement.

## STATEMENT OF JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(1) as title 11 mandates the assessment of attorney fees, costs, and damages for a violation of 11 U.S.C. § 362. *E.g.*, *In re John Richards Homes Bldg. Co.*, 405 B.R. 192, 199 (E.D. Mich. 2009).

## DISCUSSION

In order to award the proper amount of reasonable attorney fees, this Court must expressly calculate the "lodestar" amount. *In re Boddy*, 950 F.2d 334, 337 (6th Cir. 1991). This amount is calculated "by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 551 (6th Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Factors such as "novelty and difficulty of the issues, special skills of counsel, and the typical compensation" are relevant factors, but "the lodestar presumably subsumes all of these factors in its analysis of the *reasonable* hourly rate and the *reasonable* hours worked." *In re Boddy*, 950 F.2d at 338 (emphasis original). The Court will conduct separate lodestar analyses for Mr. Concannon's and Mr. Mashni's fees.

I.    Reasonable Attorney Fees and Costs for Andrew Concannon

In total, Mr. Concannon is seeking $27,648.00 in attorney fees for 115.2[4] hours of professional services rendered at a rate of $240 per hour. (Fee Aff. Ex. 1). Additionally, the costs he seeks to recoup are $3,209.08. *Id.*

---

[4] The Fee Affidavit states that the total was 116.6 hours, but 1.4 worth of hours were listed as no charge.

## A. Reasonable Hourly Rate

The first step in calculating the lodestar amount is to determine a reasonably hourly fee for Mr. Concannon's professional services. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *In re Williams,* 357 B.R. 434, 438–39 (B.A.P. 6th Cir. 2007). At first glance, a fee of $240 per hour does not appear to be outside the range of reasonable rates awarded to attorneys that litigate bankruptcy matters in this Court. *See In re McLean Wine Co., Inc.*, 463 B.R. 838, 847 (Bankr. E.D. Mich. 2011) (upholding fees between $150–$355 per hour for attorneys in a chapter 13 adversary proceeding); *In re Sharp*, 367 B.R. 582, 586 (Bankr. E.D. Mich. 2007) *aff'd*, 07-12037, 2007 WL 3203134 (E.D. Mich. Oct. 31, 2007) (ordering an award of attorney fees at $265 per hour for bankruptcy litigation).

Upon further review, the Court finds that this rate is justified. At the Fee Hearing, both parties stipulated to the admission of the 2010 State Bar of Michigan Economics of Law Practice Survey ("the Bar Survey") into evidence as a fair representation of the prevailing market rates for attorneys throughout Michigan. This Survey publishes average hourly attorney rates based on variables including practice area, firm size, regional location, and years of experience. Creditors argue that based on this data, Mr. Concannon's rate should be reduced to reflect the average rate for an attorney practicing in Saginaw County of $192 per hour or the average rate for an attorney whose office is located in Bay City/Midland/Saginaw of $182 per hour. (*See* Ex. 2 at 18, 22).

The Court considers this approach to overemphasize Mr. Concannon's office location at the expense of his other relevant qualifications. *In re Williams* makes clear that the reasonableness of his fee should also factor in his specific "skills, experience, and reputation." *In re Williams,* 357 B.R. at 438–39. It was undisputed at the hearing that Mr. Concannon has 19 years of experience, is an AV-rated attorney, is the president of his ten-attorney firm,

4

customarily charges $240 per hour, and focuses much of his practice on litigation. (*See* Fee Hr'g 10:20, Nov. 12, 2013, ECF No. 145). According to the Bar Survey, attorneys with these credentials tend to command much higher rates than the average rates Creditors seek to apply. The 25th–75th percentile range of fees for attorneys in 7–10 member firms is $175–$259 per hour, for attorneys that represent debtors in bankruptcy is $175–250, and for attorneys with 16 to 25 years of practice is $185–$300 per hour. (*See* Ex. 2 at 16–20). Mr. Concannon's fee is well within those ranges. Therefore, the Court concludes that Mr. Concannon's $240 hourly rate is reasonable in light of the prevailing market rates and his additional experience.

### B. Number of Hours Reasonably Expended on the Litigation

The next step of the lodestar analysis is to determine the necessary hours Mr. Concannon expended on the litigation. *In re Williams*, 357 B.R. at 439. "While the burden is on the applicant to justify a fee request, the bankruptcy court must expressly discuss the amounts that are not supported by the application and provide a reasoning to support the court's decision." *Id.* (quoting *In re Blain*, 92-21240, 1995 WL 871180 (E.D. Mich. July 31, 1995)). Creditors object to the amount of Mr. Concannon's fee based on the following: (1) the unreasonableness of travel expenses, (2) Mr. Concannon's inability to timely produce Debtor's inventory list as requested by the Court, (3) that the total amount is unreasonable given Debtor's limited success, and (4) Debtor's failure to mitigate damages. Creditors contend that Mr. Concannon should be awarded no more than $1,500 in fees.

#### 1. Travel Time

First, Creditors seek to reduce Mr. Concannon's fees by the amount of billable time and costs[5] he incurred during several trips between his office in Saginaw and the Court in Detroit. Each one-way trip was approximately a two-hour, 110-mile drive, which was billed at Mr.

---

[5] There were also additional charges for mileage expenses and in some cases overnight lodging.

Concannon's standard $240 hourly rate. Creditors claim that this matter did not require specialized counsel from two hours away and thus all travel-related expenses are unreasonable. In response, Mr. Concannon argues that because Debtor expressly assented to paying for his travel time and expenses, they were justifiable.

Although some travel expense is to be expected, "travel time for extensive distances and travel time billed at counsel's reasonable hourly rate cannot be said to be reasonable." *Dominic's Rest. of Dayton, Inc. v. Mantia*, 3:09-CV-131, 2013 WL 4039032 (S.D. Ohio Aug. 7, 2013); *but see In re Braddy*, 195 B.R. 365, 368 (Bankr. E.D. Mich. 1996) (upholding attorney's regular hourly rate for 45-minute drive to court for matters associated with chapter 13 case). There is no bright-line rule for how much billable travel time is reasonable, but the federal court for this district has supported an approach that balances several factors. *In re Sapienza*, 417 B.R. 1, 2 (E.D. Mich. 2009). In that case, the court upheld the bankruptcy court's reduction in attorney fees for travel time from two-and-a-half hours to one hour, and considered the following factors:

> (i) [T]he 'nature of this case,' . . . (ii) the need to balance the interest in 'paying attorneys for their time' against 'making sure that debtors and creditors alike receive the full value that they can receive in a Chapter 13' proceeding, (iii) the ability of attorneys to factor distance to the court into their fee estimates, and (iv) the fact that the resulting fee award, even with the reduced compensation for travel time, still exceeded both the 'typical' flat fee of $3,000 and the elevated flat fee of $3,500 for Chapter 13 cases featuring 'special circumstances.'

*Id.* at 2 (quoting Hr'g Tr. at 7–10, *In re Sapienza*, No. 07-32486 (E.D. Bankr. Mich. Dec. 11, 2007)).

Though *In re Sapienza* focused on attorney fees in the chapter 13 context, the Court finds its reasoning persuasive and that several of its highlighted factors are applicable to this case. Overall, this case did not present an overly unique set of circumstances that would require a specialized attorney from outside of this region. To be sure, Mr. Concannon was a capable and experienced attorney, but the Court also believes that local attorneys would have been equally

6

equipped for this matter. Moreover, given the value of the property in controversy in this case ($9,370), it was unreasonable and inefficient for Debtor to agree to pay Mr. Concannon's customary hourly rate for travelling time, which amounted to nearly $1,000 in fees alone for each round trip to Detroit.[6] However, as *In re Sapienza* points out, attorneys do need to be paid for their time. *Id.* And even if local counsel was retained in this case, she or he would likely still incur some billable travel expenses. Therefore, the Court will attempt to strike a balance and reduce the fees and costs associated with Mr. Concannon's travel to Detroit by half. Under these circumstances, it is unreasonable to pay an attorney more than one hour of travel expenses for each one-way trip to a court appearance. *See id.*

### 2. Production of the Inventory List

Creditors also argue that Mr. Concannon's attorney fees should be reduced because he failed to provide a correct and timely inventory list as required by the Court's Order on September 15, 2011 [ECF No. 90]. In their responsive brief, Creditors make the conclusory statement that Mr. Concannon's inability to promptly produce the inventory list caused unnecessary legal fees and costs. (Creditors' Resp. 4). The Court finds this argument unpersuasive for two reasons. First, Creditors cannot highlight any additional hours in Mr. Concannon's itemized statement that he incurred from this delay. The inventory list may have been filed late, but there is no indication that he expended more hours than necessary or duplicated hours on the matter. Second, the fact that Debtor did not timely comply with the Court's request adversely affected her burden of proof on the merits of the case. The Court finds no reason to punish Debtor again for this delay when it had no impact on the amount of reasonable fees incurred by Mr. Concannon.

---

[6] Approximating a two hour trip to and from Detroit multiplied by a $240 per hour rate.

### 3. Debtor's Success on Her Claims

Creditors claim that further reduction of Mr. Concannon's fees is necessary because while Debtor was successful on her stay violation and conversion claims, she was not successful on her claims for a bankruptcy discharge injunction violation. Additionally, Debtor only achieved partial recovery on the claims that she did prove. The Court found that she was entitled to only some of the property she was seeking—$2,670 worth of equipment, instead of the $9,370 she sought. Creditors claim that awarding Mr. Concannon approximately eleven times the amount of Debtor's recovery is unreasonable.

To support this argument, Creditors cite *In re Juliao* where this Court stated that "[w]hen a professional's efforts have failed to produce a significant benefit, the task of proving the reasonableness of the fees to the Court becomes unsurprisingly more difficult." *In re Juliao*, 07-48694-WSD, 2011 WL 6812542, *10 (Bankr. E.D. Mich. Nov. 29, 2011). The Court agrees that the amount of fees sought by Mr. Concannon is untenable in light of his client's limited recovery. However, since the attorney fees in *In re Juliao* were to be paid out of the chapter 13 estate as administrative expenses, this Court had to consider the benefit the litigation provided to the entire estate—i.e., the other creditors. *Id.* at *8. Here, the attorney fees to be paid will not reduce the recovery for other creditors, thus alleviating some of that concern. Moreover, of particular relevance is the Code's objective underlying the award of attorney fees under § 362, which is to discourage creditors from violating the automatic stay. *See In re McLaughlin*, 96 B.R. 554, 560 (Bankr. E.D. Pa. 1989). The fact that Creditors were defiant in their violation and unwilling to unilaterally return Debtor's property militates in favor of a significant award of attorney fees to accomplish this objective.

It is also relevant that the violation the Court seeks to remedy is more serious than a mere technical violation of the automatic stay. *See In re Grine*, 439 B.R. 461, 467 (Bankr. N.D. Ohio

2010) (holding that creditor violated the automatic stay by sending two billing statements in error and awarding $560 in attorney fees); *see In re Price*, 179 B.R. 70, 72 (Bankr. S.D. Ohio 1995) (noting that mailing one collection letter was technically a stay violation, but assessing only $75 in attorney fees due to the lack of severity). Creditors' culpability in this matter is compounded by the fact that they fought vehemently to preserve their supposed interest in Debtor's property—a continuous and serious violation of the automatic stay. When a creditor refuses to comply with the automatic stay until ordered by a court, it follows that the attorney fees required to bring about that judicial enforcement—though relatively high—are more likely to be found reasonable and necessary. *Compare In re Sharon*, 234 B.R. 676, 688 (B.A.P. 6th Cir. 1999) (upholding lower court's award of $2,122.50 in attorney fees that were spent to force creditor through litigation to return debtor's vehicle), *with In re Risner*, 317 B.R. 830, 840 (Bankr. D. Idaho 2004) (declining to award attorney fees for a violation of the automatic stay where creditor made one phone call to the debtor and the resulting litigation was unnecessary to halt the offending behavior).

Presumably, had Debtor not litigated this case as aggressively as she did, Creditors would have taken unfettered ownership of her equipment. Although Creditors complain that the amount of attorney fees requested are excessive in light of the value of Debtor's recovery, Creditors ignore the fact that their unrelenting refusal to return Debtor's property was the direct cause of the majority of this litigation. Debtor's recovery was less than she sought, but this is not to say that it was insignificant. This equipment was necessary for Debtor to restart another restaurant business. This point is illustrated by the fact that she has elected to take possession of the equipment rather than a money judgment for its value. Mr. Concannon's fees will be reduced by hours expended that were not reasonable or necessary; however, given the fact that Creditors caused most of this litigation, his total fee award will still be high relative to Debtor's recovery.

9

#### 4. Duty to Mitigate

Although Creditors created many barriers to Debtor's recovery, she "[wa]s also under a duty to mitigate [her] damages." *In re Harris*, 374 B.R. 611, 616 (Bankr. N.D. Ohio 2007). "[T]his means that after reasonable offers of settlement are made, any attorney fees incurred thereafter must be borne by the debtor." *Id.*; *see also In re Esposito*, 154 B.R. 1011, 1015 (Bankr. N.D. Ga. 1993) (reducing attorney fee award when parties should have settled an automatic stay violation). The testimony at the Fee Hearing indicated that Mr. Evangelista offered to settle with Debtor at the pre-trial conference. (Fee Hr'g 10:43). Although the attorneys debated the reasonableness of those terms, it was an undisputed offer by Creditors to return the majority of Debtor's property still on the premises. To be sure, it was likely not all Debtor sought to recover in this case. But Debtor did not take seriously the opportunity to engage in productive negotiations and avoid the expense of trial. Debtor's counsel admitted at the Fee Hearing that Creditors' offer was not attractive because it "did not include attorney fees, treble damages, or anything else" aside from the return of the property already on the premises. (*Id.* at 10:44).

Section 362 violations should not be considered a profit-making venture. *See In re Russell*, 448 B.R. 212, 218 (Bankr. N.D. Ohio 2011). "The automatic stay afforded by section 362 is intended to be a shield protecting debtors and their estates, and should not be used as a sword for their enrichment." *In re McHenry*, 179 B.R. 165, 169 (B.A.P. 9th Cir. 1995). Debtor's success at trial was, at most, a marginal improvement from Mr. Evangelista's pre-trial settlement offer. Instead of exploring that offer, the matter was further litigated at the prospect of maximizing Debtor's recovery. This resulted in significant increases in Mr. Concannon's fees with no commensurate benefit. The Court therefore concludes that as of October 16, 2012, this matter could have been settled and future litigation avoided. All hours expended by Mr. Concannon after this date will be removed from his lodestar calculation.

### 5. *Miscellaneous Reductions*

The Court will also reduce Mr. Concannon's bill by the hours spent preparing for and deposing Mr. Evangelista on April 20–21, 2011. This amounts to 6.4 hours of billable time that did not produce any information that was reasonably necessary for Debtor's case. Upon review of Debtor's subsequent briefs,[7] the Evangelista deposition record is cited minimally, and only for the proposition that Creditors were claiming title to the equipment—an element that had been undisputed. Finally, Mr. Concannon lists several billing entries for "receiving" documents at 0.2 increments, which are either billed individually or lumped together with other tasks. (Fee Aff. Ex. 1). Without further explanation from Mr. Concannon, the Court must conclude that "receiving" documents is not a billable task that merits a $240 per hour fee. Accordingly, the lodestar amount will be reduced by fourteen 0.2 hour billable entries,[8] totaling 2.8 hours.

### C. Total Awarded Attorney Fees and Costs for Mr. Concannon

To implement the appropriate reduction for travel time, the Court will factor in a six-hour reduction based upon Mr. Concannon's six trips to and from court appearances.[9] Further, the time expended after October 16, 2012, will be removed, which amounts to fourteen billing entries totaling 43.3 hours. The Court will exclude 6.4 hours for the Evangelista deposition and 2.8 hours for unnecessary "receiving" time. The Court finds that all other hours sought by Mr. Concannon were necessary and actually incurred at a reasonable hourly rate of $240 per hour. The total lodestar amount is thus 56.7 hours multiplied by $240 per hour, for a total of $13,608.00.

---

[7] Debtor's Resp. to Summ. J., ECF No. 64; Debtor's Findings of Fact and Conclusions of Law, ECF No. 106; Debtor's Supplementary Post-Trial Brief, ECF No. 136.

[8] These correlate to entries on Jan. 1, 2011; Jan. 27, 2011 (2x); Feb.7, 2011; Mar. 28, 2011 (2x); Mar. 29, 2011; Apr. 1, 2011; June 3, 2011; June 14, 2011; Aug. 25, 2011; Aug. 29, 2011; Aug. 30, 2011, and Feb. 15, 2012.

[9] Pertaining to the following dates: Jan. 12, 2011; Jan. 13, 2011; Aug. 31, 2011 (2x); Sept. 27, 2011; and Sept. 28, 2011. There was also travel time after October 16, 2012, but this is removed for the other noted reason.

| | | | | | |
|---|---|---|---|---|---|
| **Fees Sought:** | | **115.2 hours** | | **$27,648** | |
| | - Travel Time | | (6.0) | | ($1,440) |
| | - Evangelista Deposition | | (6.4) | | ($1,536) |
| | - "Receiving" Time | | (2.8) | | ($672) |
| | - Post-Oct. 16, 2012 Time | | (43.3) | | ($10,392) |
| **Fees Awarded** | | **56.7 hours** | | **$13,608** | |

Mr. Concannon's costs will be similarly reduced. The Court will reduce the mileage costs associated with each of Mr. Concannon's trips to court by half.[10] The entire mileage expense associated with the unnecessary Evangelista deposition on April 21, 2011, will be excluded. Costs will also be reduced by the overnight lodging expenses,[11] given that it was unnecessary for Debtor to retain out-of-town counsel as noted above. Finally, the Court will decline to award costs incurred after the October 16, 2012, relating to additional prosecution of this case beyond what was reasonably necessary—six billing entries totaling[12] $996.15. The Court finds that all other costs listed in Mr. Concannon's Fee Affidavit were necessary and reasonable, and he is awarded a total of $1,339.79.

| | | | |
|---|---|---|---|
| **Costs Sought:** | | **$3,209.08** | |
| | - ½ Mileage Expense | | ($240.50) |
| | - Evangelista Deposition | | ($97.92) |
| | - Lodging Expenses | | ($534.72) |
| | - Post-Oct. 16, 2012, Costs | | ($996.15) |
| **Costs Awarded** | | **$1,339.79** | |

---

[10] These days were Jan. 12, 2011; Jan. 13, 2011; Aug. 31, 2011; Sept. 27, 2011; and Jan. 28, 2011. The costs associated were $109.14, $124.32, $120.99, $126.54, respectively, for a total of $480.99. Half of this amount is $240.50. There is no billing entry for the mileage incurred on Jan. 12, 2011.

[11] These costs total $534.72 for entries dated Jan. 12, 2011; Sept. 27, 2011; and Sept. 28, 2011.

[12] Pertaining to entries for: $62.15; $62.15; $15.00; $40.00; $119.70; $697.15.

II.        Reasonable Attorney Fees for Raymond Mashni

Debtor also seeks attorney fees for Attorney Raymond Mashni in the amount of $3,500 for drafting the initial Motion to Compel and providing some assistance to Mr. Concannon throughout this case. Mr. Mashni did not provide any affidavit or detailed itemization of the fees he seeks in this matter. Instead, Mr. Concannon conducted a direct exam of Mr. Mashni at the Fee Hearing to create a record. Mr. Mashni testified that his fee represents 17.5 hours of billable hours—multiplied by an hourly rate of $200 per hour—but is actually only "a fraction" of what he spent working on this case. (Fee Hr'g 9:53).

The Sixth Circuit has instructed that when a party is seeking attorney fees, the "[p]laintiff has the burden of providing for the court's perusal a particularized billing record." *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991). "Although counsel need not record in great detail each minute he or she spent on an item, the general subject matter should be identified." *Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) (internal citations and quotations omitted). Finally, "[i]n obtaining the number of hours expended on the case, the district court must conclude that the party seeking the award has sufficiently documented its claim." *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984).

The Court can readily conclude that Mr. Mashni's complete lack of billable time documentation is insufficient to support his claim. Mr. Mashni attempted to haphazardly construct a record from memory by recanting on the witness stand tasks he completed on this case over the past three years, with no reference to specific dates or times. He has offered no contemporaneous record upon which this Court can base a reasonable award of attorney fees. *See United Slate*, 732 F.2d at 502. ("Where the documentation is inadequate, or recently compiled retrospective estimations of time expended, the district court would do violence to its judicial

13

obligations were it to accept the amounts claimed at their value."). He has fallen well short of his burden to provide documentation with "sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Id.* at 502 n.2. The Court "will not indulge in extensive labor and guesswork to justify a fee for an attorney who has not done so himself." *In re New Boston Coke Corp.*, 299 B.R. 432, 438 (Bankr. E.D. Mich. 2003) (quoting *In re Woodward East Project, Inc.*, 195 B.R. 372, 375 (Bankr. E.D. Mich. 1996)). Therefore, the Court declines to award Mr. Mashni the $3,500 he seeks in attorney fees.

III.    Actual Damages

Debtor also requests $21,000 for the installation costs of the Reznor Makeup air unit as actual damages, which she claims the Court excluded from its earlier judgment. However, as this Court explained at the Fee Hearing, this is an issue with the Court's disposition that must be dealt with properly as a post-judgment motion. The Court did not find that Debtor met her burden to prove that Creditors converted or violated the stay with respect to the Reznor unit. Any position contrary to that will require the Court to reconsider its prior decision. Thus, the Court declines to award the requested actual damages.

CONCLUSION

For the reasons set forth, the Court finds that the reasonable amount of attorney fees awardable to Mr. Concannon is $13,608. Additionally, he is entitled to recover $1,339.79 worth of costs associated with this litigation. Mr. Mashni, for failing to provide the Court with sufficient documentation of his time, is not entitled to recover any attorney fees. Lastly, the Court finds that Debtor has not proven that she incurred any actual damages. The Court will enter an appropriate order.

.

Signed on March 07, 2014

                                        /s/ Walter Shapero
                              _____
                              Walter Shapero
                              United States Bankruptcy Judge